# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

ANGELINA RUCKMAN,     )
     )
     Plaintiff,     )
     )
v.     )     Case No. CIV-21-264-GLJ
     )
KILOLO KIJAKAZI,     )
Acting Commissioner of the Social     )
Security Administration,     )
     )
     Defendant.     )

## OPINION AND ORDER

The claimant Angelina Ruckman requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled.  For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-one years old at the time of the administrative hearing (Tr. 35).  She completed high school and has no past relevant work. (Tr. 22, 180).  The claimant alleges that she has been unable to work since January 25, 2018, due to borderline personality disorder, post-traumatic stress disorder ("PTSD"), manic depression, and panic attacks.  (Tr. 179).

## Procedural History

On May 12, 2019, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  Her application was denied.  ALJ Edward M. Starr conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 29, 2021 (Tr. 12-23).   The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five in this case.  At steps two and three, he determined that the claimant had the severe impairments of depression, anxiety, personality and impulse-control disorders, and trauma and stressor-related disorders, but that she did not meet a Listing.  At step four, he found that the claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with a number of nonexertional limitations, *i.e.*, she could understand, recall, and perform tasks involving

one or two steps; could focus for two hours with routine breaks and had the ability to pace and persist for an eight-hour workday and forty-hour workweek despite psychological symptoms; could interact with co-workers and supervisors to learn tasks and accept criticism, but could not tolerate frequent interaction or frequent cooperation to complete work tasks; and could adapt to a work setting and some changes in work settings; but she was unable to interact appropriately or tolerate contact with the public (Tr. 17).  The ALJ then found that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *e.g.*, poultry dresser, laundry worker, and housekeeping cleaner (Tr. 22-23).

## Review

The claimant contends that the ALJ erred in assessing the evidence related to her mental impairments.  Specifically, she contends that the RFC assigned by the ALJ is inconsistent with the medical evidence.  She further challenges the ALJ's treatment of two consultative physician opinions in the record, as well as his assessment of her subjective complaints.  Finally, she contends that because the ALJ committed these errors at step four, his step five findings are also in error and require reversal.  The Court agrees that the ALJ failed to properly assess her RFC, and the ALJ's decision should therefore be reversed.

The relevant medical evidence reveals that the claimant received two days of inpatient treatment at Laureate Hospital in Tulsa, Oklahoma in January 2018.  She had been admitted for a severe functional impairment, and her discharge diagnoses included major depressive disorder, recurrent, severe, without psychosis; PTSD; panic disorder; and

borderline personality disorder.  (Tr. 298-299).  It appears she was discharged when her family felt she was safe.  (Tr. 299).

The claimant received treatment at Redbird Health Center in Sallisaw, Oklahoma, and treatment notes reflect her ongoing diagnoses including anxiety and depression, as well as the medication management thereof.  (Tr. 316-359).  Treatment notes were largely normal, other than notes reflecting she was positive for depression/anxiety.  (Tr. 328).  On July 11, 2019, she underwent an assessment for outpatient services at CREOKS Behavioral Health Services.  (Tr. 405-411).  She was assessed with bipolar disorder (current episode manic without psychotic features, severe), chronic PTSD, and borderline personality disorder, having been referred by Roland Family Counseling for treatment due to the severity of her symptoms.  (Tr. 407, 410).  On July 23, 2019, the claimant was assessed at Roland Family Counseling, where she was diagnosed with chronic PTSD, bipolar disorder (current episode manic, without psychotic features, severe), and borderline personality disorder.  (Tr. 390).  The same diagnoses applied upon reassessment in January 2020, where the claimant had been still struggling with mood shifts and past trauma, although she reported slight improvement after the December 2019 holidays.  (Tr. 427-428).  Medication management treatment notes reflect some, but not total, improvement with medication.  A November 6, 2019 note indicates that the claimant was, *inter alia*, disorganized and had flight of ideas, as well as only fair judgment and limited insight, and that her attention span and concentration span were distracted.  (Tr. 458-459).  A March 4, 2020 note indicated organized thought processes and adequate insight, but only fair judgment and distraction.  (Tr. 454-455).

Back on October 8, 2015 (over two years prior to the alleged onset date, Dr. Denise LaGrand, Psy.D., conducted a mental status/diagnostic examination of the claimant. (Tr. 277-284). Dr. LaGrand assessed the claimant with major depressive disorder and PTSD and found that the claimant had moderate impairments in social interaction, work interruptions due to psychiatric symptoms, interacting with coworkers and the public, and dealing with stress in a work environment. (Tr. 283-284). During the exam, the claimant reported symptoms including problems with concentration, sleep disturbance, persistent negative emotions, and fatigue or loss of energy every day. (Tr. 282-283). Dr. LaGrand estimated the claimant would have no significant changes in her psychological or cognitive condition in the next twelve months (Tr. 284).

On July 30, 2019, Dr. Theresa Horton conducted a diagnostic interview and mental status examination of the claimant. (Tr. 395-399). At the time of the exam, the claimant was not on any psychiatric medications. (Tr. 396). Dr. Horton noted that the claimant's appearance was generally appropriate, that her speech was normal but with a pressured tone, and that she was cooperative and genuine. However, she also noted that the claimant appeared somewhat anxious and emotional but appeared "to push to maintain a happy face. She eventually bec[ame] tearful and [found] it hard to stop crying, but again, trie[d] to put on a happy face." (Tr. 398). She assessed the claimant with chronic PTSD, panic disorder, unspecified bipolar disorder, and unspecified personality disorder with prominent cluster B traits. (Tr. 399). Under "Prognosis," Dr. Horton stated that the claimant appeared to understand more complex concepts but appeared to remember and manage best those that were simple and perhaps somewhat more complex but routine. (Tr. 399). Dr. Horton noted

the claimant had difficulty adjusting while completing such tasks in public, indicating that she struggles to complete tasks under pressure or stress and is easily overwhelmed. (Tr. 399). She recommended dialectical cognitive behavioral (educational) type therapy. (Tr. 399).

The initial state reviewing physician found the claimant had moderate limitations in the four broad functional areas and that she could perform simple and some detailed but not complex work under direct supervision, that she could adapt to change with forewarning, and that she could sustain a forty-hour workweek and an eight-hour workday, but that she should not have public contact. (Tr. 72). On reconsideration, Dr. Lisa Swisher, Ph.D., found that the claimant could understand, recall, and perform simple one- to two-step tasks; focus for two-hour periods with routine breaks, and pace and persist for eight-hour work day and a forty-hour workweek despite psychological symptoms; interact with co-workers and supervisors to learn tasks and accept criticism but not tolerate frequent interactions or a need for frequent cooperation to complete work tasks; and could adapt to a work setting and some changes in the work setting; but that she cannot interact appropriately or tolerate contact with the public (Tr. 89).

At the administrative hearing, the claimant testified that she stopped working due to her "mental disability," and that she had been fired from three or four jobs previously. (Tr. 36-37). She indicated that she was fired for missing work, which she attributed to her depression. (Tr. 41). She testified that her depression causes her to be down for weeks, up to a couple of months, and that she sometimes does not want to get out of bed which even affects her ability to take care of her children. (Tr. 38, 51-53). She agreed that people and

work situations overwhelm her easily and discussed that she will often cry.  (Tr. 39).

Additionally, she testified that she has anxiety in public, and around authority figures and

supervisors.  (Tr. 42, 47).  She testified that she is now on medication prescribed and

managed through CREOKS, but that she has still has depression as well as manic episodes.

(Tr. 45).  In discussing her manic episodes, she testified that she often has outbursts when

she does not like other people's opinions.  (Tr. 46-47).  As for her work history, she testified

that she has not worked a full eight-hour day since she turned twenty-one years old and has

a history of calling in sick or leaving work early for the day.  (Tr. 49-52).

In his written decision at step four, the ALJ summarized the claimant's hearing

testimony as well as most of the medical evidence.  (Tr. 17-21).  He noted her history of

mental impairments, as well as her January 2018 inpatient treatment.  (Tr. 18).  He found,

however, that the claimant's statements were not consistent with the record because her

medications were generally effective in controlling her symptoms, she had very little

mental health treatment prior to the January 2018 inpatient stay, and there is no indication

that any of her physicians opined on her ability to work.  (Tr. 19).  As to the opinion

evidence, he found Dr. LaGrand's opinion persuasive as it was consistent with Dr. Horton's

later exam.  (Tr. 20).  He likewise found Dr. Horton's opinion persuasive as supported by

her exam findings, and consistent with Dr. LaGrand's examination.  (Tr. 21).  He noted

mental symptoms but found there was no evidence of "remarkably long-standing limiting

symptoms and treatment thereof or any concern by the claimant's providers for remarkable

deficits or changes in the claimant's mental/cognitive/social capabilities."  (Tr. 21).  He

further found the state agency physician opinions persuasive, supported by their reviews

of the record, and consistent with the findings of Dr. LaGrand and Dr. Horton.  (Tr. 21).
He thus concluded there was work the claimant could perform and that the claimant was
therefore not disabled.  (Tr. 21-23).

The claimant asserts that the ALJ's RFC is unsupported by substantial evidence,
specifically as to the limitations related to her mental impairments, the opinions of Dr.
Horton and Dr. LaGrand, and in his evaluation of the consistency of her subjective
statements.  She also contends that this resulted in an error in the identification of jobs she
can perform at step five.  An RFC has been defined as "what an individual can still do
despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996).
It is "an administrative assessment of the extent to which an individual's medically
determinable impairment(s), including any related symptoms, such as pain, may cause
physical or mental limitations or restrictions that may affect his or her capacity to do work-
related physical and mental activities." *Id.*  This includes a discussion of the "nature and
extent of" a claimant's physical limitations including "sitting, standing, walking, lifting,
carrying, pushing, pulling, or other physical functions (including manipulative or postural
functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b),
416.945(b).  Further, this assessment requires the ALJ to make findings on "an individual's
ability to do sustained work-related physical and mental activities in a work setting on a
regular and continuing basis[,]" and to "describe the maximum amount of each work-
related activity the individual can perform based on the evidence available in the case
record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7.

As part of her RFC argument, the claimant asserts that the ALJ's evaluation of the consultative opinions from Dr. Horton and Dr. LaGrand were deficient because the ALJ failed to properly account for them in the RFC despite finding them persuasive. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c(a), 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most

persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.   20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Here, the claimant asserts the ALJ erred by reciting and positively citing the opinions of Dr. LaGrand and Dr. Horton without actually adopting the limitations indicated within their opinions, and the Corut agrees.   Both Dr. LaGrand and Dr. Horton noted that the claimant had difficulty working in a stressful environment.   Dr. LaGrand also noted that the claimant would have moderate difficulty with work interruptions due to psychiatric symptoms and in interactions with both coworkers and the public.   The ALJ determined that Dr. LaGrand's opinion was persuasive and consistent with later evidence in the record, and asserted that the RFC limitations of one- to two-step tasks, social interaction, and concerning pace, persistence, and ability to adapt to the work setting accounted for these limitations.   Likewise, he determined that Dr. Horton's opinion was supported by the evidence and persuasive.   However, he failed to discuss how the assigned RFC accounts for these documented limitations related to interactions with coworkers and authority, as well as stress in the work environments.   It is also unclear why the RFC differentiates in interactions with the general public from coworkers and supervisors when the limitations found by Dr. LaGrand and Dr. Horton do not distinguish them this way.   The Court also notes testimony from the vocational expert at the administrative hearing reflects that an individual who could not get along with co-workers or peers for at least an hour per day would be eliminated from competitive employment.   (Tr. 59).   *See Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir.2004) ("It is improper for the ALJ to pick and choose among

medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013). Here, the ALJ has failed to do so, and this failure to properly account for the evidence in its entirety had a direct impact on the ALJ's assessment as to the claimant's ability to perform the mental demands of work, *i. e.*, her RFC. The Court must be able to follow the logic, and here it cannot. *See id.*, 2013 WL 4849101, at *2 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

The Court notes that, in addition to failing to properly assess the opinions of Dr. Horton and Dr. LaGrand, the ALJ likewise entirely failed to conduct the proper analysis as to the state reviewing physician opinions. While the state reviewing physician opinions had variations with regard to her ability to interact, pace, deal with change, and the level of simplicity of tasks, the ALJ treated them as a consistent unit. Nor did he discuss how

these opinions accounted for the claimant's stress or interaction difficulties.  And while the ALJ declared that both opinions were persuasive as they were supported by the medical record and the findings of Dr. Horton and Dr. LaGrand, he failed to discuss the differences in these opinions and how the state reviewing physician opinions accounted for, adopted, and/or rejected the limitations noted by them. This was error.  *See, e.g.*, *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].  A proper evaluation of the opinions for Dr. LaGrand and Dr. Horton, *as well as* the state reviewing physician opinions, is therefore absent from the ALJ's decision and constitutes reversible error.

Because the ALJ failed to properly evaluate the medical opinion evidence, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.  On remand, the ALJ is further instructed to consider *all* of the evidence in the record, both physical and mental, in assessing the claimant's RFC, to carefully conduct an analysis of the claimant's subjective statements in accordance with Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017), and to then consider whether there jobs the claimant can perform.  If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 4th day of November, 2022.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**